**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Willowood Care Center of Brunswick, Inc.,** | ) | **CASE NO. 1:09 CV 2782** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Shaun Donovan, in his official capacity as Secretary of the United States Department of Housing and Urban Development,** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon defendant's Motion to Dismiss (Doc. 17). This is a contract dispute. For the following reasons, defendant's motion is DENIED as to count one and GRANTED as to count two.

**FACTS**

Plaintiff, Willowood Care Center of Brunswick, Inc., dba Willowood Care Center, brings this action against defendant, Shaun Donovan (hereinafter "the Secretary"), in his official

capacity as Secretary of the United States Department of Housing and Urban Development (hereinafter "HUD").[1] Plaintiff alleges that the Secretary breached his obligations under a Regulatory Agreement for Multifamily Housing Projects (hereinafter "the Agreement") between plaintiff and the Secretary. Plaintiff alleges that subject matter jurisdiction is appropriate in this Court under 28 U.S.C. § 1331 and by the waiver of sovereign immunity granted by Congress in 12 U.S.C. § 1702.[2]

Plaintiff is a skilled nursing and rehabilitation center which participates in the Medicare and Medicaid programs as a skilled nursing facility. On March 27, 2007, plaintiff entered into the Agreement with the Secretary. Under the Agreement, HUD guaranteed plaintiff's mortgage with Red Mortgage Capital, Inc. on its facility. Pursuant to the terms of the Agreement, plaintiff was required to maintain a Reserve Fund, the purpose of which is to provide funds that the owner of the facility can use for the repair or replacement of the structure and its mechanical elements. Per the Agreement, plaintiff paid $4547.17 per month into the Reserve Fund. Disbursements may be made from the Reserve Fund only after receiving the written consent of the Secretary.

HUD inspected the facility and informed plaintiff that it needed to make certain capital improvements. Plaintiff made the improvements and alleges that it relied upon the availability of

---

[1] Plaintiff originally brought the action against HUD as well. On September 15, 2010, subsequent to defendants' filing the instant Motion to Dismiss, the Court granted plaintiff's unopposed motion to dismiss its claims against HUD and to proceed solely against the Secretary in his official capacity (Doc. 28).

[2] Title 12 U.S.C. § 1702 provides, *inter alia:* "The Secretary [of HUD] shall, in carrying out the provisions of this title and titles II, III, V, VI, VII, VIII, IX, and XI be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

the Reserve Fund to pay the cost of the improvements. On June 3, 2009, Edward Telle,[3] plaintiff's owner and operator, applied to HUD on behalf of plaintiff for release of $17,552.95, $36,140, and $7383.54 from the Reserve Fund to cover the costs of various improvements. On June 30, 2009, a HUD financial analyst rejected the request for reimbursement of the $36,140 on the basis that HUD requires plaintiff to maintain a minimum balance in the Reserve Fund of $69,000, and that granting the request for $36,140 would cause the balance in the Reserve Fund to fall below this amount. On October 12, 2009, Telle again applied for a release from the Reserve Fund in the amount of $57,886.12, and was again denied reimbursement on October 15, 2009 because the balance in the Reserve Fund would have dropped below $69,000.

Plaintiff alleges that the Reserve Fund has in the past had a balance well below $69,000 and that HUD has no reasonable basis to adjust the minimum balance to $69,000. Plaintiff further alleges that neither the HUD Handbook, nor Title 12 of the United States Code, nor the Code of Federal Regulations contain any provision imposing any prerequisites, such as a minimum balance, on the disbursement of money in Reserve Funds.

The complaint contains two counts for relief. Count one is a claim for breach of contract, alleging that the Secretary breached the covenant of good faith and fair dealing by denying plaintiff's request for reimbursement and that the Secretary failed to follow established HUD policy regarding Reserve Funds. Count two is a claim for relief under the Administrative Procedure Act (hereinafter "APA"), asking the Court to hold unlawful and set aside the Secretary's refusal to release the Reserve Funds, to declare that the Secretary unlawfully

---

[3] Edward Telle is also identified as Edward Tellings in Exhibit 1 to the Complaint.

withheld or unreasonably delayed payments to plaintiff from the Reserve Fund, and to compel the Secretary to reimburse plaintiff as requested.

The Secretary now moves to dismiss the complaint based on lack of subject matter jurisdiction. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id*. Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id*. Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id*. In such cases, the court is free to weigh any evidence properly before it to satisfy itself as to the existence of its power to hear the case. *Id. See also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**ANALYSIS**

The Secretary moves to dismiss both counts of the complaint for lack of subject matter jurisdiction.

**A. Breach of Contract**

The United States is immune from suit except as it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A waiver of sovereign immunity must be clear, express, and

unambiguous. *United Liberty Life Ins. v. Ryan,* 985 F.2d 1320, 1325 (6th Cir. 1993). The Tucker Act, 28 U.S.C. § 1491, operates as a grant of jurisdiction and a waiver of sovereign immunity for certain types of claims by giving the United States Court of Federal Claims jurisdiction over those claims. *Mitchell,* 463 U.S. at 212. Specifically, the Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act applies to contract disputes with the United States involving more than $10,000. 28 U.S.C. § 1346(a)(2). If an action is within the exclusive jurisdiction of the Court of Claims under the Tucker Act, a district court does not have jurisdiction over that action regardless of other possible statutory bases. *A.E. Finley & Assoc., Inc. v. United States,* 898 F.2d 1165, 1167 (6th Cir. 1990). Whether a suit for breach of contract against the Secretary of HUD constitutes a suit against the United States for the purposes of the Tucker Act depends on whether the suit against the Secretary is an attempt to reach the treasury of the United States. *See Housing Products Co. v. Flint Housing Comm.,* No. 99-1551, 2000 U.S. App. LEXIS 29146, *7 (6th Cir. Nov. 7, 2000) (citing *Portsmouth Redev. and Housing Auth. v. Pierce,* 706 F.2d 471 (4th Cir. 1983); *Industrial Indem., Inc. v. Landrieu,* 615 F.2d 644 (5th Cir. 1980); and *SS Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28 (2d Cir. 1979)).[4]

---

[4] The *Housing Products Co.* decision engages in a discussion of the district court's ruling on subject matter jurisdiction, which the Sixth Circuit regarded to be correct, even though appellants did not raise subject matter jurisdiction on appeal and it was therefore waived. Nevertheless, the analysis is on point.

If money damages awarded in a breach of contract suit would have to be satisfied from Treasury funds, then the suit is properly one against the United States and must be brought, if at all, in the Court of Claims. *Id.* at *6.

The National Housing Act provides a separate waiver of sovereign immunity allowing the Secretary to be sued in federal district court under 12 U.S.C. § 1702: "The Secretary [of HUD] shall, in carrying out the provisions of this title and titles II, III, V, VI, VII, VIII, IX, and XI be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." Such "sue and be sued" waivers have been held to waive immunity for suits against agencies that engage in commercial-type transactions with the public. *See C.D. Barnes Assocs., Inc. v. Grand Haven Hideaway Limited Partnership*, 406 F. Supp. 2d 801, 811 (W.D. Mich. 2005) (citing *Far W. Fed. Bank, S.B. v. Office of Thrift Supervision*, 930 F.2d 883, 888 (Fed. Cir. 1991) and *Falls Riverway Realty Inc. v. Niagara Falls*, 754 F.2d 49, 55 (2d Cir. 1985)). Courts have held that the § 1702 waiver applies where the plaintiff can show that the claim is within the scope of the waiver and that "any judgment for the plaintiff [is] recoverable from funds in the possession and control of the Secretary that are severed from Treasury funds and treasury [sic] control." *Landrieu*, 615 F.2d at 646. *See also C.D. Barnes*, 406 F. Supp. at 815 (citing, *inter alia*, *Landrieu*, 615 F.2d at 646, *S.S. Silberblatt*, 608 F.2d at 36; *Merrill Tenant Council v. United States Dept. of Hous. and Urban Dev.*, 638 F.2d 1086, 1091 (7th Cir. 1981); and *Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co.*, 595 F.2d 1126, 1131 (9th Cir. 1979)). The distinction between general Treasury funds and agency funds arises from *Federal Housing Administration, Region No. 4 v. Burr*, 309 U.S. 242, 250-251 (1940), in which the Supreme Court held that a prior version of § 1702 applied to waive immunity, but also

stated the following:

> That does not, of course, mean that any funds or property of the United States can be held responsible for this judgment. Claims against a corporation are normally collectible only from corporate assets. That is true here. Congress has specifically directed that all such claims against the Federal Housing Administration of the type here involved "shall be paid out of funds made available by this Act." § 1. Hence those funds, and only those, are subject to execution. The result is that only those funds which have been paid over to the Federal Housing Administration in accordance with § 1 and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution. Since no consent to reach government funds has been given, execution thereon would run counter to *Buchanan v. Alexander, supra*. To conclude otherwise would be to allow proceedings against the United States where it had not waived its immunity.

The Secretary argues in his Motion to Dismiss, filed prior to plaintiff's dismissal of claims against HUD, that the Court lacks subject matter jurisdiction over plaintiff's breach of contract claim. He argues that plaintiff is seeking the release of funds from a reserve account that it is required to maintain but cannot access without the Secretary's consent. He argues that both the requirement that plaintiff maintain the reserve account and that it obtain the Secretary's consent for release of funds are contractual obligations, that plaintiff is seeking reimbursement from the fund and compensatory damages, and thus plaintiff's claim is a claim for monetary relief based upon a contract with an agency of the United States. Therefore, the Secretary argues, plaintiff's breach of contract claim may only be brought in the Court of Federal Claims and this Court lacks subject matter jurisdiction.

Plaintiff responds[5] that the Tucker Act does not apply because the Tucker Act is limited

---

[5] Plaintiff's arguments in its opposition brief are presented as though its claims against HUD have already been dismissed although plaintiff did not move for dismissal of the claims against HUD until after filing its opposition brief.

to claims against the United States and executive agencies seeking contract damages, and plaintiff's claims are solely against the Secretary of HUD in his official capacity, seeking only recovery of funds from the Reserve Fund. Plaintiff argues that under these circumstances, the National Housing Act applies to waive the Secretary's sovereign immunity under 12 U.S.C. § 1702.[6] Plaintiff also argues that the claims against the Secretary are based on his administrative functions, as required by § 1702, and that the claims against him do not involve Treasury or public funds, but its own monies held in the Reserve Fund, which is controlled by the Secretary.

The Secretary's reply recognizes that plaintiff is seeking only recovery of funds from the Reserve Fund. He argues, however, that to the extent plaintiff is asserting a claim for breach of contract through breach of the covenant of good faith and fair dealing, such a claim is properly brought in the Court of Claims pursuant to the Tucker Act. He also argues that even if the Tucker Act did not apply to plaintiff's claims, the waiver of sovereign immunity under 12 U.S.C. § 1702 does not apply because the Reserve Fund is not under the possession and control of the Secretary, but is owned by plaintiff and held by the mortgagee.[7]

---

[6] Unlike the Tucker Act, the waiver of sovereign immunity under 12 U.S.C. § 1702 is not an independent grant of subject matter jurisdiction and must be coupled with another statute granting the Court jurisdiction to hear claims against the Secretary. *Landrieu*, 615 F.2d at 647. Plaintiff alleges in his complaint that subject matter jurisdiction is proper under 28 U.S.C. § 1331. The Secretary does not dispute that plaintiff's claims arise under the laws of the United States, and as the claims involve the rights and responsibilities of parties under the National Housing Act, the Court agrees that § 1331 grants jurisdiction.

[7] The Secretary also raises the issue that plaintiff has failed to state a claim for breach of the covenant of good faith and fair dealing. As the Secretary has not moved for dismissal for failure to state a claim, and as he raises the issue for the first time in his reply brief, the Court will not consider this argument. *See Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005) (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002)).

Upon review, the Court finds that the Tucker Act does not apply and subject matter jurisdiction is appropriate in this Court for plaintiff's breach of contract claim against the Secretary.

The Tucker Act does not apply because this is not a breach of contract action against the United States. It is a breach of contract action against the Secretary of HUD. Plaintiff's opposition brief has made unequivocally plain that plaintiff is seeking only the funds that currently exist in the Willowood Reserve Fund, which exists solely for plaintiff's use in making repairs or improvements to the Willowood facility, and consists of deposits made by plaintiff.[8] Plaintiff's opposition brief states, in reference to all claims against the Secretary:

> Willowood alleges that the $57,886.12 in funds that it seeks to recover as damages are its own monies, which are held in a separate account– the Willowood Reserve Fund– that is controlled by the Secretary of HUD in his official capacity and government agency function as a corporate entity. . . . These monies are separate and distinct from Treasury funds and Treasury control, and are not public funds originating from the public treasury. . . . Indeed, Willowood does not seek monies guaranteed by funds in the general Treasury or funds from the United States. The compensatory damages and monies that Willowood seeks are, as indicated, the $57,886.12 from the Willowood Reserve Fund that Willowood has requested be disbursed from the Willowood Reserve Fund and for which Willowood made applications for disbursement to the HUD Secretary in 2009. . . . Consequently, any judgment rendered against the Secretary of HUD could be and will be paid out of the money in the Willowood Reserve Fund that is a separate fund in the control and possession of the Secretary[.] . . . *Because Willowood's claims are limited to and based explicitly on Willowood's claim of right to access to [sic] the $57,886.12*

---

[8] The Court notes that money in the Reserve Fund may be used as collateral in the event a mortgagor defaults on the mortgage. Additionally, in the event that a mortgagor prepays the mortgage, the mortgagor would be entitled to the money in the Reserve Fund. *See Kukui Gardens Corp. v. Holco Capital Group, Inc.*, No. 08-00049 ACK-KSC, 2009 WL 3365853, at *10 (D. Hawai'i Oct. 15, 2009) (citing the HUD handbook).

> *that Willowood has paid into the Reserve Fund, which funds are under the control of the Secretary of HUD, the suit cannot be construed as against the United States for public monies.*

(Opposition Brief at 8-10 (emphasis added).) Plaintiff's breach of contract action is thus more properly characterized as one for specific relief– disbursement of the $57,886.12 in the Reserve Fund for which plaintiff has previously applied– and not one for compensatory damages.

The Secretary's sole support for his argument that a claim for breach by the Secretary of HUD of the covenant for good faith and fair dealing in a Regulatory Agreement is only appropriate in the Court of Federal Claims is *Chambery v. United States*, 54 Fed. Cl. 2, 7 (2002). Subject matter jurisdiction, however, was apparently not raised in *Chambery* and the application of the Tucker Act is not addressed by the court, thus the Court finds *Chambery* unpersuasive. Accordingly, the Court finds it does not lack subject matter jurisdiction pursuant to the Tucker Act.

The Court also finds that plaintiff's breach of contract claim is within the scope of the waiver set forth in § 1702 and that any judgment for plaintiff would be satisfied out of funds under the control of the Secretary. The parties do not dispute that the Regulatory Agreement for HUD's mortgage guarantee falls within the stated scope of the waiver, and the Secretary admits in his motion to dismiss that plaintiff is insured under HUD's mortgage insurance program as provided in 12 U.S.C. § 1715w(c).[9] Accordingly, the Court finds that the Secretary was carrying out administrative activities within the scope of the waiver when he entered into the Regulatory

---

[9] 12 U.S.C. § 1715w provides for mortgage insurance of nursing homes and states: "Authorization. The Secretary is authorized to insure any mortgage (including advances on such mortgage during construction) in accordance with the provisions of this section upon such terms and conditions as he may prescribe and to make commitments for insurance of such mortgage prior to the date of its execution or disbursement thereon."

Agreement with plaintiff, and thus plaintiff's breach of contract claim is within the scope of the waiver.

The parties do dispute, however, whether the funds from which any judgment for the plaintiff will be paid are under the Secretary's control. The Secretary argues that when HUD does not actually hold the funds at issue, § 1702 does not apply. He argues that the Reserve Fund is owned by plaintiff and held by the mortgagee, not by the Secretary or by HUD, thus § 1702 does not apply. In support, the Secretary cites to two cases, *Armor Elevator Co., Inc. v. Phoenix Urban Corp.*, 493 F. Supp. 876 (D. Mass. 1980) and *Kukui Gardens Corp. v. Holco Capital Gp., Inc.*, No. 08-00049 ACK-KSC, 2009 WL 3365853, at *10 (D. Hawai'i Oct. 15, 2009). Upon review, the Court finds that the Reserve Fund is effectively under the Secretary's control for purposes of the § 1702 waiver. Although the Regulatory Agreement states that the account in which the Reserve Fund is maintained shall at all times remain under the control of the mortgagee, it is undisputed that disbursements from the Reserve Fund may not be made without the Secretary's consent. (Agreement at ¶ 2(a): "Disbursements from such fund, whether for the purposes of effecting replacement, of structural elements and mechanical equipment, of the project or for any other purpose, may be made only after receiving the consent in writing of the Secretary.") *Cf. Chambery,* 54 Fed. Cl. at 8 (considering a Regulatory Agreement with the same language and analyzing HUD's argument that "it can modify the minimum reserve deposit amount because paragraph 2(a) of the Agreement placed the fund 'at all times under [its] control'; and holding that "[t]he Agreement explicitly establishes HUD's control of the funds in the reserve account and its authority to approve a change in the monthly deposit, but the Agreement does not establish who ultimately can modify the deposit amount that is subject to

HUD's approval").

The cases cited by the Secretary are inapposite. In *Armor Elevator*, plaintiffs never alleged that HUD held any funds related to the subject matter jurisdiction of the action. *Armor Elevator*, 493 F. Supp. at 883. Although not particularly clear from the opinion, it appears the funds in *Armor Elevator* were funds retained by the owner and paid out before the action was commenced. The plaintiffs only alleged that HUD violated equitable obligations as to these funds. *Id.* In this case, however, plaintiff has alleged that HUD currently has control over the funds against which it is proceeding. In *Kukui Gardens*, neither HUD nor the Secretary was a party to the suit and sovereign immunity was not at issue. While the Secretary is correct in stating that the court found that "reserve funds belong to the mortgagor," the context was a claim for conversion in which the mortgage servicing company failed to return the money in the reserve fund to the mortgagor upon prepayment of the mortgage, despite HUD's direction to do so. *Kukui Gardens*, 2009 WL 3365853 at *6, 11. The court never considered the question of whether the funds were in control or possession of HUD.[10]

Accordingly, the Court finds that the waiver of sovereign immunity under 12 U.S.C.

---

[10] This Court notes, however, that *Kukui Gardens* court, in reaching its decision, relied in part upon a 2001 HUD Legal Opinion addressing who is entitled to the reserve funds when an FHA-insured mortgage is refinanced with another non-FHA-insured loan. The opinion stated: "HUD's position is that, although the loan is FHA-insured, the [replacement reserve fund] is an asset of the project *which is under the control of HUD* and, as long as the requirements of the [regulatory agreement] have not been violated, would remain with the project until the FHA-insured mortgage reaches maturity or is otherwise paid in full. Upon prepayment or maturity of the insured mortgage loan (and termination of the [regulatory agreement]), the funds in the [replacement reserve fund] would not revert to HUD. The funds would remain with the project owner." *Kukui Gardens*, 2009 WL 3365853 at *11 (quoting HUD Legal Opinion CIM-0122) (emphasis added). This opinion further supports HUD's effective control of the Reserve Fund.

§ 1207 applies to allow plaintiff's breach of contract suit against the Secretary of HUD.

**2. Administrative Procedure Act Claim**

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., grants a court jurisdiction to review the actions taken by an agency of the federal government "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Thus, where a plaintiff challenges a nondiscretionary act of a federal agency, judicial review is appropriate under the APA. *See Friends of the Crystal River v. United States Environmental Protection Agency*, 35 F.3d 1073 (6th Cir. 1994).

In discussing the scope of judicial review of agency actions, § 706 of the APA provides that a "reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." This section expressly empowers a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Moreover, § 706(2) allows a court to "hold unlawful and set aside agency action, findings, and conclusions" under certain circumstances, including when such agency action, findings and conclusions are found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance in law; or (B) contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2). Finally, to be reviewable under the APA, an agency action must be a "final agency action" for which there is no other adequate remedy in court. 5 U.S.C. § 704.

The Secretary argues that the Court lacks subject matter jurisdiction over plaintiff's APA claim because the APA's waiver of sovereign immunity under 5 U.S.C. § 704 does not extend to claims for which there is an adequate remedy in another court, and plaintiff has such a remedy

through its breach of contract claim in the Court of Federal Claims. He also argues that the Tucker Act impliedly forbids relief under the APA, thus the waiver of sovereign immunity under 5 U.S.C. § 702 does not apply.

Plaintiff does not directly respond to the Secretary's arguments that the APA does not apply, but instead focuses on whether 12 U.S.C. § 1702 applies to give this Court jurisdiction over "all" of plaintiff's claims. (Opposition Brief at 4.)

The Secretary replies that if the Court determines that the Tucker Act does not apply in this case, then plaintiff has properly asserted a claim that HUD's action was arbitrary, capricious, and procedurally improper under the APA, and this Court has jurisdiction to hear such a claim.

Upon review, the Court finds that it does not have jurisdiction to review the Secretary's decision to deny reimbursement under the APA. The Court notes that it has already determined that plaintiff may proceed with its breach of contract claim in this Court. Plaintiff has not alleged that the decision to deny reimbursement was a final one, nor has plaintiff presented any arguments as to why plaintiff's breach of contract claim or any other claims that may have been brought by plaintiff in this Court against the Secretary given the broad waiver under § 1702 are an inadequate remedy. Accordingly, plaintiff's claim for relief under the APA is dismissed.

**CONCLUSION**

For the foregoing reasons, the Secretary's Motion to Dismiss is DENIED as to count one and GRANTED as to count two.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/18/10